### UNITED STATES DISTRICT COURT

### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| M&D INFORMATION SYSTEMS, INC. | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | |
| | : | |
| THE TOWER GROUP, INC. | : | Civil No. 3:05cv552 (PCD) |
| Defendant/Third-Party Plaintiff | : | |
| | : | |
| -vs- | : | |
| | : | |
| THE INFRASTRUX GROUP, INC. | : | |
| Third-Party Defendant | : | |

### RULING ON THIRD-PARTY DEFENDANT'S MOTION TO DISMISS

Third-Party Defendant, The Infrastrux Group, Inc. ("Infrastrux"), moves [Doc.
No. 19] to dismiss Defendant/Third-Party Plaintiff's, The Tower Group, Inc.'s ("Tower
Group"), Third-Party Complaint on the ground that this Court lacks personal jurisdiction
over Infrastrux.  For the reasons set forth below, Infrastrux's Motion to Dismiss is
**granted**.

I.      **Background**

This case arises from a contract formed between Infrastrux and Tower Group, in
the summer of 2003. (Third-Party Compl. ¶ 9.)  The agreement provided that Tower
Group, a Connecticut corporation with its principal place of business in Connecticut,
would provide computer programming services to Infrastrux, a Washington corporation
with its principal place of business in Washington, necessary to install Vertex sales tax
software. (Id. ¶¶ 2, 9.)

In addition to requiring Tower Group to install the Vertex software, Infrastrux also needed Tower Group to interface the Vertex software with its existing JD Edwards software. (Id. at ¶ 6.)  As Tower Group did not customarily engage in that sort of interface work, the parties agreed that Tower Group should contract with M&D Information Systems, Inc. ("M&D"), a Colorado corporation with its principal place of business in Colorado, to perform the necessary interfacing services. (Id. at ¶ 8.)  Because Infrastrux had requested that Tower Group contract with M&D for the interfacing work, the contract between Tower Group and Infrastrux provided that Tower Group would, as part of its hourly billing to Infrastrux, bill Infrastrux for programming work done by M&D. (Id. at ¶ 12.)

After M&D had completed approximately 95% of their programming obligations, it became apparent that M&D had done the programming work in the wrong code, claiming that they had done so at the direction of Infrastrux to save time on the installation. (Id. at ¶ 15.)  As a result of the programming error, M&D had to duplicate their programming job in the proper code, generating charges in the sum of $77,000. (Id. at ¶¶ 16, 17.)  Tower Group billed Infrastrux for this amount and Infrastrux refused to pay, claiming that M&D was at fault for the reprogramming work. (Id. at ¶ 18.)  Tower Group subsequently refused to pay M&D the $77,000, resulting in M&D filing suit against Tower Group in Connecticut Superior Court. (Id. at ¶ 19.)

Pursuant to Conn. Gen. Stat. § 52-102a, Tower Group impleaded Infrastrux, alleging, inter alia, that if Tower Group is found liable to M&D for any part of the $77,000, then Infrastrux is liable to Tower Group for all or part of M&D's claim. (Id. at ¶ 20.)  Infrastrux removed this action from the Connecticut Superior Court to this Court

and moved to dismiss the Third-Party Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## II.     Discussion

### A.     Standard

The law of the forum state governs the exercise of personal jurisdiction in a diversity action. Hoffritz For Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985).  Analyzing the existence of personal jurisdiction involves a two-step process. First, the court must determine whether the state's long-arm statute applies to the defendant.  Second, if the long-arm statute would apply, the court must then determine whether the exercise of personal jurisdiction would comport with the constitutional requirement of due process. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the burden rests with the plaintiff to establish personal jurisdiction over the defendant through a prima facie showing.  Distefano v. Carozzi N. Am. Inc., 286 F.3d 81, 84 (2d Cir. 2001).  In examining the evidence, the allegations set forth in the plaintiff's pleadings and affidavits must be construed in a light most favorable to the plaintiff. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

### B.     Statutory Analysis

In its Third-Party Complaint, Tower Group asserts that this Court can exercise personal jurisdiction over Infrastrux pursuant to Connecticut's long-arm statute applicable to foreign corporations, specifically Conn. Gen Stat. § 33-929 (f)(1) and (2), which provide in pertinent part that:

(f) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state . . .

Tower Group alleges that Connecticut's long-arm statute grants personal jurisdiction over Infrastrux as the contract between Tower Group and Infrastrux was formed in Connecticut, and as Infrastrux solicited the business of Tower Group in Connecticut. (Third-Party Compl. ¶ 3.)  This Court will examine each of these arguments in turn.

Tower Group's first allegation concerns Conn. Gen. Stat. § 33-929 (f)(1), providing that Connecticut courts may exercise personal jurisdiction over a foreign corporation arising out of any contract made in, or to be performed in Connecticut. Therefore, the critical question here is whether the contract between Tower Group and Infrastrux was either "made in this state or to be performed in this state."

The affidavits of both parties agree that Infrastrux accepted the offer sent to them via written proposal from Tower Group.[1] (See Aff., J. Tower, Sr. ¶¶ 19-22; Aff. D. Madison ¶¶ 9-11.)  As Tower Group was the party who sent the proposal with the terms "[i]f Infrastrux accepts our proposal please sign the enclosed copy of this letter and return it to . . . [Tower Group's] attention," Infrastrux needed only to accept the offer in order to

---

[1] Although ¶ 11 of D. Madison's Affidavit states that "Infrastrux and the Tower Group entered into the contract in Bellevue, Washington," this Court need not accept this conclusory legal statement as necessarily dispositive as to whether the contract was actually created in Washington state.

4

create a contract in Washington, as "a contract is considered made when and where the last thing is done which is necessary to create an effective agreement." H. Lewis Packaging, LLC v. Spectrum Plastics, Inc., 296 F. Supp. 2d 234, 239 (D. Conn. 2003); (citing Chemical Trading, Inc. v. Manufacture de Produits Chimiques de Tournan, 870 F. Supp. 21, 24 (D. Conn. 1994)).  Moreover,  John W. Tower, Sr., the President of Tower Group, stated in his affidavit that "on July 2, 2003, Richard Scwartz (sic) [the Chief Operating Officer of Infrastrux] telephoned me at my Connecticut office, and indicated that Infrastrux accepted the proposal of June 30, 2003 that had been submitted to him" (Aff. J. Tower, Sr. ¶ 22).  As "[a] contract entered into over the telephone is created in the state in which the party accepts," Pomazi v. Health Indus. of Am., Inc., 869 F. Supp. 102, 105 (D. Conn. 1994), it is clear that the contract between Tower Group and Infrastrux was formed in Washington state.

As the contact was not made in Connecticut, the inquiry now shifts to whether the contract was performed Connecticut.  The evidence indicates that it was not.  The affidavits submitted by both parties agree that all work performed pursuant to the contract was carried out in either Washington or Colorado. (See Aff., J. Tower, Sr. ¶¶ 23-29; Aff. D. Madison ¶¶ 14, 15.)  Given that the contract was not either made or performed in the State of Connecticut, Tower Group's assertion of long-arm jurisdiction under Conn. Gen. Stat. § 33-929 (f)(1) must fail.

Tower Group's second allegation concerns Conn. Gen. Stat. § 33-929 (f)(2), which grants Connecticut courts personal jurisdiction over foreign corporations arising out of any business solicited in this state by mail or otherwise if the corporation has

repeatedly so solicited business.  This analysis requires the plaintiff to establish that the defendant both solicited business in the State of Connecticut, and has done so repeatedly.

Finding that the defendant solicited business in Connecticut requires a highly fact specific case-by-case analysis.  However, the Supreme Court of Connecticut has set forth several examples of situations which tend to suggest solicitation of business.  For instance, in Frazer v. McGowan, 198 Conn. 243, 251, 502 A.2d 905 (1986), the Supreme Court of Connecticut found that "affirmative measures designed to attract Connecticut patients" were sufficient to conclude that a Rhode Island hospital had solicited business in Connecticut.  The Supreme Court of Connecticut applied the same "affirmative measures" standard to find that a bank had solicited business in this State. Thomason v. Chemical Bank, 234 Conn. 281, 298, 661 A.2d 595 (1995).

Applying this standard to the facts at issue, it does not appear that Infrastrux solicited business in Connecticut when it sent Tower Group a Request for Proposal "RFP."  The RFP was not an offer, but rather an invitation for Tower Group to make an offer.  Beyond the RFP Infrastrux sent to Tower Group, Infrastrux did not advertise in Connecticut, conduct business in Connecticut, have regional offices in Connecticut, or in any way take affirmative measures to attract Connecticut customers. (Aff. Madison ¶¶ 6, 12, 13).  Given that Infrastrux did not solicit business in the State of Connecticut, Tower Group's assertion of long-arm jurisdiction under Conn. Gen. Stat. § 33-929 (f)(2) must also fail.

In its Memorandum in Opposition to the Motion to Dismiss, Tower Group argues that when a Connecticut court has personal jurisdiction over the underlying claim, it also has personal jurisdiction over properly impleaded third-party defendants. (Third-Party

6

Pls.' Opp. Third-Party Defs.' Mot. Dismiss at 9). Although Tower Group asserted that this Court could exercise personal jurisdiction over Infrastrux by virtue of Conn. Gen. Stat § 33-929 (f)(1) and (2) in its Third-Party Complaint, (Third-Party Compl. ¶ 9), Tower Group also alleges that § 33-929 need not apply at all for this Court to exercise personal jurisdiction over Infrastrux.  In making this claim, Tower Group relies on Conn. Gen. Life Ins. Co. v. SVA, Inc., 743 F. Supp. 107 (D. Conn. 1990).

        In Connecticut General, the court held that although the third-party plaintiff could not invoke Connecticut's long-arm statute to assert personal jurisdiction over the impleaded third-party defendant, the long-arm statute was only directed towards assertions of original jurisdiction, not extensions of the existing jurisdiction to third-parties. Id. at 109.  As a result, the court ruled that "[w]here the court has jurisdiction over the underlying claim, the court does have personal jurisdiction over an impleaded party." Id.  Having received further direction from both the Connecticut Supreme and Appellate Courts in the sixteen years since Connecticut General was decided, we decline to follow the rule set forth in that case.

        Unlike Connecticut's long-arm statute, § 33-929 (f), the State's impleader statute, § 52-102a, is not meant to impose limits on the constitutionally permitted reach of the trial court's personal jurisdiction. See Thomason , 234 Conn. at 293-94.  Additionally, Connecticut courts have consistently required that all foreign parties be subject to the provisions of the long-arm statute in order for the court to exercise personal jurisdiction over them.  For example, in the case of Pitruzello v. Muro, 70 Conn. App. 309, 798 A.2d 469 (2002), the Appellate Court of Connecticut affirmed the Superior Court's decision to grant a third-party defendant's motion to dismiss on the grounds that the third-party

7

plaintiff could not establish personal jurisdiction under the long-arm statute. Id. at 320-21.  In so ruling, the unanimous Court held that "[a] foreign corporation may be haled into court in Connecticut only if a plaintiff alleges jurisdictional fact that, if proven, would satisfy one of the provisions of our long arm statute, General Statutes § 33-929 (f)." Id. at 310.  The fact that the Court referred to the third-party plaintiff and third-party defendant as simply "plaintiff" and "defendant" supports the contention that Connecticut courts view no substantive difference between original parties and joined parties for purposes of determining personal jurisdiction.

The validity of Connecticut General's personal jurisdiction rule was directly questioned in the 2005 case of Gouveia v. Simonazzi, No. 3:03CV597MRK, 2005 WL 544707 (D. Conn. March 1, 2005).  In a case involving a motion to dismiss a Third-Party Complaint for lack of personal jurisdiction, the court refused to accept the reasoning of Connecticut General that "the Connecticut interpleader [sic, impleader] statute is jurisdictional, i.e., a substantive provision," and resolved the case on other grounds. Id. at 1-2, n. 1.  Citing the Connecticut Supreme Court case of Wilkinson v. Boats Unlimited, Inc., 236 Conn. 78, 87, 670 A.2d 1296 (1996), which held that the long-arm statute foreclosed foreign corporations from suing in this State if they did not reside here at the time the action was brought or have a usual place of business in this State, the court in Gouveia questioned "whether Connecticut General is consistent with the plain language of § 33-929 (f) and the Connecticut Supreme Court's decision in Wilkinson." Gouveia, 2005 WL 544707 at *2.

The Connecticut General rule has also been called into question by other commentators.  For instance, in C Wright, A. Miller, and M. Kane's Federal Practice and

Procedure, the treatise mentions that "the court [in <u>Connecticut General</u>] ruled that personal jurisdiction was properly asserted over the third-party defendant even though it appeared outside the state long-arm statute because Connecticut's impleader rules would authorize joinder.  The confusion of state joinder and long-arm provisions in this decision makes the holding highly questionable." 6 C. Wright, A. Miller and M. Kane, <u>Federal Practice and Procedure</u> § 1445 n. 1 (2d ed. Supp. 2005).

Given that <u>Connecticut General</u>'s personal jurisdiction rule has been called into doubt by both federal courts and scholarly treatises, and the fact that the Connecticut Supreme and Appellate Courts have held to the contrary, we decline to follow <u>Connecticut General</u>'s personal jurisdiction rule, and instead hold that all foreign defendants must be subject to the provisions of Connecticut's long-arm statute in order for a Connecticut court to exercise personal jurisdiction over them.

As Tower Group has failed to establish a prima facie showing that Connecticut's long-arm statute applies to Infrastrux, there is no need to determine whether the assertion of personal jurisdiction would comport with the constitutionally protected right to due process.

### C.    Waiver

In its Supplemental Memorandum in Opposition to the Motion to Dismiss, Tower Group raises several arguments that Infrastrux waived its personal jurisdiction claim by filing counterclaims based on federal common law, Connecticut law, and the fact that Infrastrux "actively participated in this litigation."(Third-Party Pls.' Supp. Opp. Third-Party Defs.' Mot. Dismiss at 1-2).  We will address each of these waiver arguments in turn.

In arguing for waiver based on federal common law, Tower Group relies on the 1907 Supreme Court case of Merchants Heat & Light Co. v. J.B. Clow & Sons, 204 U.S. 286 (1907). In Merchants Heat, the Supreme Court held that by filing a counterclaim, the defendant became a plaintiff in turn, thus invoking and submitting to the jurisdiction of the court. Id. at 289-90.  Prior to the adoption of the Federal Rules of Civil Procedure in 1938, Tower Group's argument for waiver would have prevailed.  However, there is considerable question as to whether the jurisdictional waiver rule of Merchants Heat survived the enactment of the Federal Rules. See Matter of Arbitration between InterCarbon Bermuda, Ltd. and Caltex Trading and Transport Corp., 146 F.R.D. 64, 69 (S.D.N.Y. 1993). Although some courts continued to find waiver after the enactment of the Federal Rules, See, e.g., Merz v. Hemmerle, 90 F.R.D. 566 (E.D.N.Y. 1981); Beaunit Mills, Inc. v. Industrias Reunidas F. Matarazzo, S.A., 23 F.R.D. 654 (S.D.N.Y. 1959); North Branch Products, Inc. v. Fisher, 284 F.2d 611 (D.C. Cir. 1960), "the trend in more recent cases is to hold that no Rule 12(b) defense is waived by the assertion of a counterclaim, whether permissive or compulsory." 5 C. Wright and A. Miller, Federal Practice and Procedure § 1397 (3d ed. Supp. 2005).

The Second Circuit has not ruled on the question of whether the assertion of a counterclaim waives the party's ability to challenge personal jurisdiction, but noted that "federal law on this issue appears to be in disarray." Cargill, Inc. v. Sabine Trading & Shipping Co., 756 F.2d 224, 229 (2d Cir. 1985).  However, six Circuit courts have found, at least in the case of compulsory counterclaims, that jurisdictional defenses are not waived by the filing of a responsive pleading. See Neifeld v. Steinberg, 438 F.2d 423 (3d Cir. 1971); Bayou Steel Corp. v. M/V Amsetlvoorn, 809 F.2d 1147 (5th Cir. 1987);

Knapp-Monarch Co. v. Dominion Elec. Corp., 365 F.2d 175 (7th Cir. 1966); Gates

Learjet Corp. v. Jensen, 743 F.2d 1325 (9th Cir. 1984); Hasse v. American Phonograph

Corp., 299 F.2d 666 (10th Cir. 1962); Chase v. Pan Pacific Broad., Inc., 750 F.2d 131

(D.C. Cir. 1984).  We view this to be the better reasoned approach considering the plain

meaning of the Rule, the policy behind the Rule, and the "overall scheme" governing the

enactment of the Federal Rules of Civil Procedure. InterCarbon, 146 F.R.D. at 69.

      To begin with, a finding of waiver here would be contrary to the plain meaning of

Rule 12(b). Fed.R.Civ.P 12(b) provides in pertinent part that:

> every defense, in law or in fact, to a claim for relief in any pleading,
> whether a claim, counterclaim, cross-claim, or third-party claim, shall be
> asserted in the responsive pleading thereto . . . No defense or objection is
> waived by being joined with one or more other defenses or objections in a
> responsive pleading or motion.

      As the Third Circuit held in Neifeld v. Steinberg, 438 F.2d 423 (1971), "If we

were to take the position that a defendant, by raising his jurisdictional defenses in the

same pleading in which he asserted a counterclaim, waived his jurisdictional defenses,

we would in effect be engrafting a judicial exception to Rule 12(b)."  Additionally, as

other courts have mentioned, when the drafters wanted to create waiver consequences in

certain situations (Rule 12(h) for example), they did so explicitly. See, e.g., Lomanco,

Inc. v. Missouri Pacific R.R. Co., 566 F. Supp. 846, 850 n. 11 (1983).

      In addition to the language of Rule 12(b), the policy behind the Rule runs

contrary to the concept that the filing of a counterclaim amounts to a waiver of a personal

jurisdiction defense.  "The purpose behind Rule 12(b) is to avoid the delay occasioned by

successive motions and pleadings and to reverse the prior practice of asserting

jurisdictional defenses by 'special appearance.'" Neifeld, 438 F.2d at 429.  Were we to

hold that the assertion of a counterclaim waived the right of the party to challenge

personal jurisdiction, we would effectively be reinstating the old rule of special

appearances, whereby the party challenging jurisdiction must do so before answering to

the merits. See id.  By providing that all defenses and objections be included in the

responsive pleading, Rule 12 forever obviated the need for a party to invoke the special

appearance in order to challenge the court's jurisdiction.  The opinion of the Third

Circuit in Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 874 (3d

Cir. 1944) perhaps said it best that:

> Rule 12 has abolished for the federal courts the age-old distinction
> between general and special appearances. A defendant need no longer
> appear specially to attack the court's jurisdiction over him. He is no longer
> required at the door of the federal courthouse to intone that ancient
> abracadabra of the law, de bene esse, in order by its magic power to
> enable himself to remain outside even while he steps within. He may now
> enter openly in full confidence that he will not thereby be giving up any
> keys to the courthouse door which he possessed before he came in.

Instead, when a counterclaim is asserted along with a jurisdictional defense, the

counterclaim is treated as being conditional, essentially "hypothecated upon an adverse

ruling on Defendant's jurisdictional defenses." Wafios Mach. Co. v. Nucoil Indus. Co.,

2004 U.S. Dist. LEXIS 13674 (S.D.N.Y., July 23, 2004) (quoting Queen Noor, Inc. V.

McGinn, 578 F. Supp. 218, 220 (S.D. Tex. 1984)).

Finally, the overall scheme of the Federal Rules does not support the argument for

waiver in this instance. Rule 1 defines the scope of the Federal Rules as designed to

"secure the just, speedy, and inexpensive determination of every action."  Moreover,

concerning the general rules of pleading, Rule 8(f) provides that "[a]ll pleadings shall be

so construed as to do substantial justice."  This directive rejects the strictly formalistic

construction of pleadings rules in favor of a broader, more equitable reading designed to

further the ends of fairness and justice.  In a case such as this, a finding of waiver would

"exalt form over substance in a way that the adoption of the Federal Rules of Civil

Procedure rendered obsolete." Wafios, 2004 U.S. Dist. LEXIS 13674 (citing Local Union

No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. A & M Heating, Air

Conditioning, Ventilation & Sheet Metal, Inc., 314 F. Supp. 2d 332, 352 (S.D.N.Y.

2004)).

     For all of the foregoing reasons, this Court holds that the waiver rule created in

Merchant's Heat has been overruled by the enactment of the Federal Rules of Civil

Procedure and is thus inapplicable to this case.

     In addition, Tower Group's arguments for waiver based on Connecticut law and

Infrastrux actively participating in the litigation are similarly unpersuasive.  Although the

Second Circuit stated in Cargill that "where there is no contrary federal rule, it is

appropriate to apply state procedure in diversity cases," Cargill, 756 F.2d at 229, the

present case is clearly distinguishable as the Federal Rules of Civil Procedure 12(b),

12(h), 13(a), and 14(a) all apply.  As there are directly applicable federal procedural

laws, a federal court sitting in diversity will apply the federal, not the state, procedural

law. See Hanna v. Plumer, 380 U.S. 460, 465 (1985).

     In deciding on whether Infrastrux forfeited its personal jurisdiction claim by

actively participating in the litigation, the court will examine "all of the relevant

circumstances." Epperson v. Entm't Express, Inc., 338 F. Supp. 2d 328, 334 (D.Conn.

2004) (quoting Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2d Cir. 1999).  In so

doing, we find that all the relevant circumstances strongly militate against a finding of

waiver due to active participation in the litigation.  As Infrastrux's counterclaim was compulsory, it must be pled as part of the responsive pleading in order to avoid waiver under Rule 13.  In addition, Infrastrux complied with the Order of this Court specifying due dates for Motions to Dismiss, Amended Pleadings, Discovery, and other Dispositive Motions.  It would be highly inequitable to conclude that Infrastrux waived its personal jurisdiction claim by complying with this Court's Order, particularly when non-compliance could have resulted in sanctions.  The Court's Order was based on the above-mentioned conditional nature of counterclaims when coupled with jurisdictional defenses, and the interest in streamlining the judicial process by having the parties continue with the litigation while the Motion to Dismiss was pending.

For all the foregoing reasons, this Court holds that Infrastux did not waive its personal jurisdiction claim.

**III.   Conclusion**

For the reasons stated herein, Infrastrux's Motion to Dismiss is **granted**.

SO ORDERED.

Dated at New Haven, Connecticut, March  _21_ , 2006

_____
          /s/
         Peter C. Dorsey
     United States District Judge